In the Matter of the Accounting of Carrie S. Snow, as Executrix of Ora S. Snow, Deceased.

Surrogate's Court, Jefferson County, July 28, 1948.

*E. J. Carter* for executrix, petitioner.

*Paul E. Brown* for Arthur L. Petrie, objectant.

*Paul E. Porter,* special guardian.

WRIGHT, S. This proceeding concerns the account of proceedings of the legal life tenant and executor.

The objectant claims that " upon the death of the testator Ora S. Snow, his wife was under the duty to convert the cattle into cash, and, having the right to take only the income from the capitalized cash, was under the further duty to account for i.e., turn over, the cash principal or invested principal to the remainderman, upon her death ".

There are two principal questions to consider. Was the life tenant given the use of livestock as such or should she have converted the cattle into cash? If it be determined that she was given the use of the livestock in specie, then it must be determined whether she was under any obligation to replace them when they died.

At the time of testator's death he owned two farms which were operated as dairy farms and on which were upwards of forty. cows owned by him. At the time of his death in 1932, the market value of cows was very low, the cattle being appraised at $1,192.50. The life tenant continued to operate the farms until her death fifteen years after testator died. It is not argued that any of the cows on the farms at the time of the life tenant's death were the original cows which were on hand when testator died. Objectant claims that the accountant should be surcharged, not in the sum of $1,192.50, the original appraisal value, but in the sum of $4,605.04 being the amount they brought on sale after life tenant died.

In this community where the agricultural industry chiefly concerns dairy farming these questions frequently arise and are of particular importance.

The pertinent provisions of the will are these: " I give, devise and bequeath unto my wife Carrie S. Snow, the use, rents, issues and profits of all the rest, residue and remainder of my estate, of every name and nature, for and during her natural life. After the death of my said wife, I direct that all of my property be converted into cash and the proceeds thereof divided and paid as follows: [here follow several dipositions of moneys] all the

, rest, residue and remainder of my estate to be divided into five equal shares &ast; &ast; &ast;. I nominate and appoint my wife Carrie S. Snow, executrix of this my last will and testament &ast; &ast; &ast;; and I direct that my executrix shall not be required to give any bond or other security; and I direct that my said executrix shall keep paid all taxes and assessments against my estate and keep the buildings thereon reasonably insured.''

It does not appear that the testator had any substantial income other than that which he received from his farming enterprises. Did testator intend that his widow must be retricted to the income from the bare farms and interest on the $1,192.50 which the cows would have brought at his death? Or did he intend that she would have the benefit of the possession and use of the cattle as such?

His direction to convert into cash after her death, together with his direction that she should pay taxes and provide for insurance, evidence an intention that she should continue to operate the farms with the cattle.

I, therefore, conclude that there was no obligation on the wife's part to turn the cattle into cash as a part of the administration of the estate, but rather that it was testator's intention that she enjoy and use the cattle in specie, as he had done.

We now come to consideration of the question as to whether the life tenant was under any obligation to replace the cattle as they died off.

In his will it is apparent that he intended to make provision for his wife for the balance of her life after his death. The testator had been engaged in dairy farming for many years. It is a matter of common knowledge, and particularly well known to a man engaged in dairy farming, that the life of a dairy cow is a short period of years at best, and, being an animate object, is subject to various diseases. One epidemic of bovine disease might have wiped out the entire herd. Being an experienced farmer, it must be assumed he knew of the variance in the cost of cows over a period of years. Did he intend to limit, or possibly even destroy, the provision for his wife by requiring her to replace the original cows when they died off?

Long since, the general principle of law has recognized in this State that the increase of animals belongs to the person, who by hiring for a time becomes temporary proprietor of the animal. (*Putnam* v. *Wyley,* 8 Johns. 432, 435.) It would seem that the same rule should apply in a life estate. As to the young stock which may have been raised on the farms, these became the

property of the life tenant. " Where one is the owner of a limited estate, as for life or during widowhood, in live stock, it may be stated as a general proposition that such person, and not the remainderman, is entitled absolutely to the increase thereof during the continuance of the particular estate, although this general rule does not apply where a contrary intent is manifested by the creator of the life estate. The general rule is based on the ground that, as the right of the owner to the particular estate is unlimited during its continuance, the profits arising from it during that time belong to him as an incident to his ownership of the property out of which the issue comes, and he can hold it against those entitled after the termination of his estate." (2 Am. Jur., Animals, § 16.)

Did he intend that she should go into the market to replace the original cows? Again, since he was an experienced dairyman, he was familiar with the fluctuations in value of cows over a period of years. No better illustration can be had as to the difference in value than exists here between that at the time of testator's death and the amount for which they have been sold. I do not find any intention on the part of the testator that his widow should expend her funds to make available a dairy for the benefit of the remaindermen who are brothers, sisters and nephews and nieces.

Under the conditions here present, the rule that where there is a general bequest for life, with a remainder over, the property must be sold and converted into money has no application. When the property in question is of a wasting character and might be exhausted in the lifetime of the tenant for life, the gift to the remainderman must be taken subject to such possibility where it appears that there was no intention of the testator that a conversion should take place before the death of the life tenant. (*Matter of Yates*, 99 N. Y. 94.)

The objections should be dismissed. Appropriate provisions may be incorporated in the decree of judicial settlement.